## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

|  |  |  |
|---|---|---|
| | § | |
| **JIMMY MARSHALL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:05-CV-0060-C** |
| | § | **ECF** |
| | § | **Referred to the U.S. Magistrate Judge** |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed March 9, 2005, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of his complaint on December 14, 2005, Defendant filed her brief on February 10, 2006, and Plaintiff filed his reply on February 27, 2006. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for a period of disability and disability insurance benefits on August 16, 2001, alleging disability beginning March 21, 2000.  Tr. 14.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 14, 32-35, 38-41.  Plaintiff filed a Request for Hearing by Administrative Law Judge on March 7, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on December 17, 2003.  Tr. 14, 203-20.  Plaintiff, represented by an attorney, testified in his own behalf.  Tr. 206-14.  Shelly Eike, a vocational expert ("VE"), appeared and testified as well.  Tr. 215-19.  The ALJ issued a decision partially favorable to Plaintiff on January 30, 2004.  Tr. 10-21.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act.  He found that:  Plaintiff met the disability insured status requirements on March 21, 2000, through the date of his decision and Plaintiff had not engaged in substantial gainful activity at any time since March 21, 2000.  Tr. 14  Plaintiff has "severe" impairments, including degenerative disk disease with radiculopathy.  Tr. 15.  Plaintiff had a non-severe mental impairment, specifically, depression.  Tr. 15, 17.  Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1.  Tr. 15.  Plaintiff's degenerative disk disease did not meet or equal the criteria of § 1.04 A of the Listing of Impairments because there was no evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising testing (sitting and supine).

The ALJ discussed Plaintiff's treatment history after an on-the-job injury in February 2000.  *Id*.  He noted that Plaintiff was initially prescribed epidural steroid injections, physical therapy, and nonsteroidal anti-inflammatory pain medication, and a muscle relaxant, which did not improve

his pain and other symptoms. *Id.* The ALJ noted that Plaintiff underwent a surgical decompression of the left nerve root, a bilateral hemilaminectomy, a foraminotomy, and a diskectomy at L5-S1 on August 29, 2000. *Id.* He noted that Plaintiff was initially noted to be "doing quite well" and "able to function fairly well" with a "marked reduction in his leg pain." However, he began to experience worsening left leg and back pain. *Id.* Additional epidural steroid injections were performed, but Plaintiff's pain increased such that he was unable to progress to physical therapy and remained unable to work. *Id.* The ALJ noted that on April 26, 2001, Plaintiff underwent additional surgery. *Id.*

The ALJ discussed Plaintiff's post-surgical treatment. *Id.* He noted that: Plaintiff experienced a mild flare up of his left radiculitis, and was treated with an epidural steroid injection, and the removal of the bone stimulator placed during surgery was scheduled. *Id.* Dr. Nathan J. Wilson, Plaintiff's treating surgeon,[1] indicated that Plaintiff should consider future employment at the sedentary to a maximum of light to medium exertional level. *Id.* The ALJ noted reports of the removal of the bone stimulator, and Plaintiff's indication that he had increased his activity level and was now at a "tolerable pain level." Tr. 16. Plaintiff continued treatment with a pain management doctor for prescriptions for narcotic pain medication, which Plaintiff used occasionally. *Id.*

Plaintiff's continued treatment with epidural steroid injections, as well as antidepressant medication and narcotic pain medication. *Id.* Plaintiff was evaluated on May 14, 2002, in relation to workers' compensation. *Id.* Plaintiff was found to have reached maximum medical improvement. *Id.*

---

[1]     The ALJ refers to Plaintiff's treating physician, Nathan J.Wilson, M.D., his surgeon and thus a treating specialist. Dr. Nathan J. Wilson is hereinafter referred to as "Dr. Wilson." Plaintiff's treating pain specialist, Selma P. Wilson M.D., is hereinafter referred to as "Dr. S. Wilson" to avoid confusion.

Subsequent medical reports indicated that Plaintiff was doing much better than before his surgery, with improved chronic low back pain. *Id*. Dr. Wilson indicated that Plaintiff could "return to some type of light to light sedentary type of work." *Id*. Plaintiff reported improvement after epidural steroid injections and reported good pain relief during a trial of a dorsal column spine stimulator. *Id*. The stimulator was permanently implanted and was reprogrammed several times to adjust pain relief. *Id*.

The ALJ found that:

Plaintiff has an underlying medically determinable impairment which could reasonably cause the symptoms alleged but, based on the evidence, his testimony that he was not able to work at any activity since March 21, 2000, was not credible. Tr. 17. Plaintiff's residual functional capacity was reduced to less than sedentary during the period from March 21, 2000, and December 16, 2002, due to his inability to sit and stand for vocationally meaning periods of time, to lift and carry objects weighing more than a couple of pounds, and to concentrate, secondary to the chronic pain associated with his herniated disk and degenerative disk disease. Tr. 18. During this period, Plaintiff unable to perform his past relevant work, or any other work. *Id*.

Beginning December 16, 2002, Plaintiff experienced medical improvement which was related to his ability to work, with no exceptions applying. Dr. Wilson indicated by December 16, 2002, that Plaintiff was able to perform his routine daily activities without difficulty, perform sedentary activities, sit for one or two hours at a time, stand for 30 minutes, walk without difficulty as long as he could rest as needed, and generally had pain which was in the tolerable range most of the time. *Id*. Plaintiff testified as to being unable to sit longer than 30 minutes, lift more than 20 pounds, or walk more than one mile without increasing his pain. Tr. 17. The ALJ also noted Plaintiff reports of his own daily activities, which included walking his dog, fishing a little bit, reading books and the newspaper, and watching football and the news on televison. Tr. 17-18.

The ALJ also noted that Plaintiff's pain management doctor opined via a signed statement that Plaintiff's pain was sufficient to be distracting to adequate performance of daily activities or work; that physical activity increased Plaintiff's pain to the point that he cannot complete a task; that pain and medication side effects can be expected to cause distractions, inattention, and drowsiness; and that Plaintiff could be expected to miss 25-30 days of work per year as a result of his impairment. Tr. 16.   The ALJ found that this treating source opinion was not adequately supported by the objective clinical evidence, including the physician's own treating notes, and declined to afford this opinion controlling weight at to the Plaintiff's condition for the period beginning December 16, 2002. Tr. 17.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p (July 2, 1996)("SSR 96-7p"). *Id.*

The ALJ found that based on the evidence in the record, to the extent that Plaintiff has been unable to engage in any work activity since March 21, 2000, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. *Id.*  However, Plaintiff's testimony that he was unable to work between March 21, 2000, and December 16, 2002, was credible. *Id.*

The ALJ found that Plaintiff could not return to his past relevant work as a mechanic or a carpet installer between March 21, 2000, and December 16, 2002. Tr. 18.  He noted that Plaintiff was considered a "younger" person with a high school education. Tr. 19; *see* 20 C.F.R. §§ 416.963, 416.964.

The ALJ found that during the period between March 21, 2000, and December 16, 2002, Plaintiff RFC was significantly less than sedentary and that Plaintiff was disabled.  Beginning

December 16, 2002, Plaintiff retained the RFC to perform the requirements of light work activity, limited to jobs that do not require: more than occasional stooping, balancing, crouching, crawling, kneeling, or climbing; climbing scaffolds, ladders, and ropes; working at unguarded heights or near unguarded hazardous mechanical equipment; sitting for more than 30 minutes at one time without the opportunity to stand in addition to a lunch and the normal legal breaks during the work day; standing/walking for more than 40 hours out of an 8-hour work day; or more than occasional pushing or pulling with the feet. Tr. 18-19. The ALJ relied upon the reports of Dr. Wilson and upon Plaintiff's reports of his own activities, as well as other evidence in the record. *Id.*

Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 20. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of small products assembler, with 20,000 jobs in Texas and 300,000 jobs nationally. *Id.* The ALJ, therefore, concluded that beginning December 16, 2002, Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff submitted a Request for Review of Hearing Decision/Order on November 23, 2004. Tr. 195-202. After granting a 25-day extension to present any additional evidence, the Appeals Council issued its opinion on January 28, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and additional evidence, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 4-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 9, 2005, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

 In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.

The Commissioner follows an eight-step process for determining medical improvement and termination of disability as a result therefrom.  *See* 20 C.F.R. § 404.1494.  The first part of the

evaluation process, then, focuses on medical improvement. *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991).  A medical improvement is defined as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1).  Such a determination "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s and must be related to the ability of the claimant to perform work activities. 20 C.F.R. §§ 404.1594(b)(1), 404.1594(b)(3).   If the Commissioner determines that there has been medical improvement related to the ability to work, it must be determined whether any exception to the medical improvement standard applies.  20 C.F.R. § 404.1594(f)(5).  The Commissioner then determines the claimant's ability to perform substantial gainful activity.  20 C.F.R. § 404.1594(f)(7). In this inquiry, "the implementing regulations incorporate many of the standards set forth in the regulations governing initial disability determinations."  *Griego*, 940 F.2d at 944;  20 C.F.R. §§ 404.1594(b)(5) and (f)(7).  However, in determining medical improvement, "the ultimate burden of proof  lies with the Secretary in termination proceedings."  *Griego*, 94 F.3d at 944.

In this case the ALJ found that Plaintiff was disabled for a closed period between March 21, 2000, and December 16, 2002.  Subsequent to December 16, 2002, Plaintiff experienced medical improvement which was related to ability to perform work activities and Plaintiff retained the RFC for a limited range of light work.  The ALJ relied upon the testimony of the VE in finding that Plaintiff could perform work which exists in the national economy and thus terminated Plaintiff's disability benefits as of December 16, 2002.

## III.   DISCUSSION

Plaintiff argues that the ALJ failed to apply the correct legal standard to evaluate the cessation date for Plaintiff's closed period.  Plaintiff further argues that the ALJ's RFC determination was not supported by substantial evidence indicating that he was exertionally limited

to sedentary level work, and the ALJ also erred by failing to appropriately weigh and consider the opinion of his treating pain specialist and by failing to recontact this treating source before declining to give her opinion controlling weight.

**A.    Whether the ALJ applied the incorrect legal standard in evaluating the cessation date of Plaintiff's disability in the closed period determination.**

Plaintiff argues that the ALJ failed to apply the correct legal standard in his decision to terminate his benefits subsequent to December 16, 2002.  Plaintiff argues that the ALJ inappropriately failed to place the burden on the Commissioner at each step to show that Plaintiff was no longer disabled.

This determination of a closed period of disability entails both a disability and a termination, as the ALJ found that Plaintiff was disabled from March 21, 2000, through December 16, 2002, and terminated such benefits after December 16, 2002, due to medical improvement.  Plaintiff correctly notes that in *Waters v. Barnhart*, the Fifth Circuit provided that the medical improvement standard should be applied to closed period cases, which "places the initial burden on the government to show that the claimant's disability has ended as of the cessation date."  *See Waters*, 276 F.3d at 717. Under the medical improvement standard, "the government must show in all respects that the person is no longer disabled."  *Id.* (citing *Griego*, 940 F.2d at 943-44).   In *Waters*, the Fifth Circuit noted that the ALJ had terminated the analysis at step four, finding that the claimant retained the RFC for light work and further finding that the claimant's ankle injury did not prevent him for doing his past relevant work as of the termination date.  *Waters*, 276 F.3d at 718.

Plaintiff argues that the ALJ in this case failed to apply the medical improvement standard as demonstrated by his failure to acknowledge the change in legal standard, by failing to indicate that the burden was on the Commissioner at each step to show that he was not disabled, and by, in fact, placing the burden on the Plaintiff.  The parties agree that the ALJ, after finding that beginning

on December 16, 2002, Plaintiff retained the RFC for a range of light work and was unable to return to his past relevant work as a mechanic or carpet layer, "[t]he burden has therefore been shifted to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which the claimant can perform."  Tr. 19.

Defendant argues that the ALJ applied the medical improvement standard in his opinion and applied the burden appropriately on the Commissioner to show that Plaintiff was not disabled at all steps.  Defendant further argues that even if the ALJ erred by saying that "[t]he burden has therefore been shifted to the Commissioner," such error is, at most, harmless.

A close review of the ALJ decision demonstrates that he repeatedly indicated that the Plaintiff experienced a work-related medical improvement, with no exceptions applying, regained the RFC for perform on a continuing and sustained basis the exertional requirement of light work subject to specified limitations, and then relied upon the testimony of a VE to find that Plaintiff could perform work which exists in the national economy.  Tr. 18-20.  In fact, the ALJ's decision makes the findings required under the medical improvement standards and provides the basis for each of these findings.  The ALJ found that:  Plaintiff had not engaged in substantial gainful activity since March 21, 2000, through the date of his decision.  Tr. 14; 20 C.F.R. § 404.1594(f)(1).  Plaintiff did not have "severe" impairments which met or equaled in severity any impairment in the Listing of Impairments.  Tr. 15, 17; 20 C.F.R. § 404.1594(f)(2).  There was medical improvement and the signs, symptoms, and medical findings were discussed to demonstrate a decrease in the severity of Plaintiff's impairments which were present at the time of that he was found disabled.  Tr. 16-19; 20 C.F.R. §§ 404.1594(b)(1), 404. 1594(f)(3).  This improvement was related to Plaintiff's ability to do work, and the basis for that finding was discussed, Tr. 18; 20 C.F.R. § § 404.1594(f)(4) and 404. 1594(f)(6).  Plaintiff's impairments were severe, and he also had a non-severe mental impairment. Tr. 15, 17; 20 C.F.R. § 404.1594(f)(7).  The ALJ also made a finding as to Plaintiff's RFC at the

time of medical improvement.  Tr. 18-19; 20 C.F.R. § 404.1594(f)(7).  The ALJ thereafter found that Plaintiff could not return to his past relevant work and turned to the testimony of the VE to determine whether Plaintiff could perform other work.  Tr. 19-20; 20 C.F.R. § 404.1594(f)(8).

The fact that the ALJ did not mention the *Waters* case and did not specifically cite the applicable regulations does not demonstrate that he applied an incorrect standard.  The ALJ addressed each of the relevant criteria in determining medical improvement as part of the closed period decision.  Clearly, the ALJ erred when he stated that "[t]he burden has therefore been shifted to the Commissioner."  Tr. 19.  However, in carefully reviewing the ALJ's opinion, it is apparent that the ALJ in fact discussed each of the steps of the medical improvement standard and that the burden was not placed on Plaintiff's inappropriately.  While the ALJ may have made an error in stating that the burden was then shifted to the Commissioner, the record demonstrates that he *applied* the appropriate legal standard.  In *Waters*, the Fifth Circuit did not provide that an ALJ must cite to the standard recognized therein, as the Fifth Circuit did in *Stone v. Heckler*, regarding the application of the severity standard.  *See  Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).  The alleged error would warrant reversal and remand only if the Plaintiff affirmatively demonstrated prejudice or survived a harmless error review.

A harmless error analysis applies to administrative failure to comply with a regulation.  *See Frank v. Barnhart,* 326 F.3d 618 622 (5th Cir. 2003).  Of course, "procedural perfection in administrative proceedings is not required."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).  This court will not vacate a judgment unless the substantial rights of a party have been affected.  Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision."  *Newton,* 209 F.3d at 458.  An error is harmless unless there is reason to think that a remand might lead to a different result.  *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989).  As such, improprieties noted by Plaintiff will

constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision.  *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

Plaintiff points to *Murphy v. Barnhart,* wherein the Honorable Nancy M. Koenig found in her Report and Recommendation that the ALJ had not applied the medical improvement standard in a closed period case and recommended that the matter be remanded for findings consistent with the "medical improvemen" standard adopted by the Fifth Circuit Court of Appeals.  *See Murphy v. Barnhart*, 2002 U.S. Dist. LEXIS 3587, 7-8 (N. D. Tex. March 5, 2002); as adopted by *Murphy v. Barnhart*, 2002 U.S. Dist. LEXIS 5044 (N.D. Tex. March 27, 2002).  Judge Koenig indicated that in the case before her, the ALJ had found that the claimant had "experienced medical improvement related to his ability to work with no exceptions applying and he regained the residual functional capacity to perform a full range of sedentary work" and therefore concluded that Murphy was entitled to only a closed period of disability, ending at the time of medical improvement.  *Id*. Because the ALJ in the *Murphy* case did not make all of the findings under the medical improvement standard, I find that case inapposite to the instant matter, where the ALJ did, indeed, make all necessary findings and where the decision demonstrates that the burden was placed on the Commissioner at every step of the process.

I find that the ALJ did not apply an improper legal standard in evaluating the medical improvement of Plaintiff's impairments and the resulting implicit termination in the award of a closed period of benefits.  I further find that the error of stating that the "burden has therefore been shifted to the Commissioner" is harmless and non-prejudicial because such error does not cast into doubt the application of the correct standard.  *Morris*, 864 F.2d at 335.

**B.      Whether the ALJ's decision and determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff further argues that the ALJ's opinon and determination of his RFC is not supported by substantial evidence given the treating source evidence indicating that Plaintiff was limited to the exertional demands of sedentary work and also given the ALJ's failure to give appropriate weight to his treating specialist who opined that Plaintiff's ability to work would be limited by his severe pain.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The regulations provide that:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR § 404.1567(a).  The ALJ found that Plaintiff could perform light work limited to jobs which require no more than occasional stooping, balances, crouching, crawling, kneeling, or climbing; which do not requiring climbing scaffolds, ladders, and ropes; which do not require sitting for more than 30 minutes at one time without the opportunity to stand in addition to lunch and the normal legal breaks during the work days; which do not require standing/walking for more than four hours of an 8-hour workday; which do not require more than occasional pushing or pulling with the feet;

and which do not require working at unguarded heights or near unguarded hazardous mechanical equipment.  Tr. 18-19.

Plaintiff notes that Dr. Wilson indicated in December 2002 that Plaintiff was able to do "fairly sedentary activities" for short periods of time without problems, sit for 1-2 hours, and stand for up to 30 minutes at a time and that he continued to experience leg and back pain which was tolerable most of the time.  Plaintiff notes that Dr. Wilson recommended that Plaintiff look for work at the sedentary level.   Tr. 157-58.   Plaintiff argues that because the burden was on the Commissioner, the ALJ should have required that a preponderance of the evidence demonstrate that Plaintiff had regained the capacity to perform a range of light work.

In his treatment note dated December 16, 2002, Dr. Wilson noted that Plaintiff was "doing a good bit better" and that his pain was helped by the dorsal column stimulator.  Tr. 157.  He noted that although Plaintiff still had some limitations in his activity, he was able to perform his activities of daily living and sedentary activities for short periods without problems.  *Id*.  Dr. Wilson opined that Plaintiff can sit for one to two hours and stand for up to 30 minutes, and he noted that walking was not a problem as long as Plaintiff can rest as needed.  *Id*.  Upon examination, Plaintiff had bilateral leg and back pain at the tolerable level most of the time.  *Id*.

Dr. Wilson opined that Plaintiff look at maxmizing his functional level and, if possible, "return to work *within those limits* at a sedentary level, being careful."  Tr. 157. Dr. Wilson opined that Plaintiff "cannot return to heavy lifting, pushing, or pulling," but "can return to some type of light to light sedentary type work."  Tr. 158.  Dr. Wilson recommended that Plaintiff be evaluated and retrained or given assistance with placement "into a light to light/medium level of function," which he indicated was "probably a more valid recommendation than any findings on a FCE [functional capacity evaluation] test, which is an effort test over one to two days."  *Id*.

The record further demonstrates that Plaintiff testified that he can lift twenty pounds, took his dogs down to the river to walk, could walk a mile before he needed to sit or rest because of back pain, fed his animals (including a cow, pig, and three dogs), could sit for 30 minutes or an hour before changing positions or walking, cooked one meal a day, read, and watched television. Tr. 207-10.

The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities. Soc. Sec. Ruling SSR 96-5p (July 2, 1996)("SSR 96-5"). The RFC assessment is based upon "*all* of the relevant evidence in the case record," including, but not limited to, medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, medical source statements, and work evaluations. Soc. Sec. Ruling 96-8p (July 2, 1996)("SSR 96-8p")(emphasis in original). The ALJ is responsible for determining a claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making the RFC assessment and in determining the limitations imposed by a claimant's impairment(s), the ALJ is instructed to consider the entire record. SSR 96-8p.

The record demonstrates that the ALJ appropriately considered the record as a whole in making his RFC determination and in incorporating limitations to reflect Plaintiff's impairments. While Plaintiff argues that Dr. Wilson opined that Plaintiff could perform only sedentary level work, the RFC assessment accurately reflects the limitations noted by Dr. Wilson and by Plaintiff himself. The RFC assessment is consistent with Plaintiff's report of being able to lift 20 pounds, to sit for 30 minutes at a time, to walk a mile before needed to rest or stop because of back pain, and to engage in his daily activities as described. The RFC assessment is also consistent with Dr. Wilson's indication that Plaintiff could stand for 30 minutes at a time, not engage in heavy lifting or pushing or pulling, and perform work within these limits. Tr. 157-58. Dr. Wilson referred to such as work

-15-

as both light to light sedentary and light to light medium.  *Id.*  However,  Dr. Wilson did not indicate whether his definition of those terms correlated to the specific definitions set forth in the regulations and, in fact, used these two terms interchangeably.  The relevant question is whether the ALJ met his burden of proof in showing that Plaintiff's retained the RFC to perform work at the specified level, subject to the enumerated limitations.  The ALJ's RFC determination is consistent with the specific limits set forth in Dr. Wilson's opinion and with Plaintiff's testimony.

Plaintiff argues that since the ALJ found his testimony not credible, there was insufficient evidence to support the RFC determination.  The record demonstrates that the ALJ only found Plaintiff's testimony not credible in part – insofar as he claimed that he was unable to perform any work activity from December 16, 2002, through the date of his decision.  Tr. 18.  The ALJ appropriately considered the entirety of Dr. Wilson's opinion, particularly as to the specific functional limitations imposed by Plaintiff's impairments, and Plaintiff's own reports of his limitations and activities in making his RFC assessment.  I find that the RFC determination is supported by substantial evidence in the record.

Plaintiff further argues that the ALJ erred by failing to appropriately weigh and consider the opinion of Dr. Selma P. Wilson, his treating pain specialist.  Dr. S. Wilson opined, in a form completed on December 8, 2003, that Plaintiff's pain was sufficient to be distracting to adequate performance of daily activities or work; that physical activity increased Plaintiff's pain to the point that he cannot complete a task; that pain and medication side effects can be expected to cause distractions, inattention, and drowsiness; and that Plaintiff could be expected to miss 25-30 days of work per year as a result of his impairment.  Tr. 185-87.  The ALJ ultimately found that Dr. S. Wilson's opinion was not adequately supported by the objective clinical evidence, including the physician's own treating notes, and declined to afford this opinion controlling weight as to the Plaintiff's condition for the period beginning December 16, 2002. Tr. 17.

The record demonstrates that Dr. S. Wilson noted on February 18, 2002, Plaintiff's report of help with the pain with the epidural steroid injections for a couple of months and that his medications were helping some. Tr. 182. She noted on April 8, 2002, Plaintiff's report of "doing okay," although the epidural steroid injection was wearing off, and again that the medications helped, although Plaintiff complained of leg and lower back pain. Tr. 180. An epidural steroid injection was administered. Tr. 181. On June 28, 2002, it was noted that the injection had helped greatly for a couple of months. Tr. 180. Plaintiff underwent another injection. Tr. 179. On September 20, 2002, he reported that he was doing about the same. Tr. 180. He again complained of lower back and leg pain. *Id.* The trial dorsal spinal cord stimulator was implanted on October 17, 2002. Tr. 178. Plaintiff reported on October 21, 2002, that the trial stimulator had taken away about 70-80% of his pain. Tr. 177. Dr. S. Wilson noted that Plaintiff wished to have a permanent placement and wanted to decrease his mediation. *Id.* She noted on November 15, 2002, that Plaintiff loved the stimulator trial and scheduled permanent placement. *Id.* However, on December 30, 2002, Plaintiff called in to report that there was pus around the stimulator, which he was able to push out and clean with peroxide. *Id.* Despite being told to come in, Plaintiff indicated that he would come at the time of his January 13, 2003, appointment and would seek antibiotics at the emergency room in Knox City. *Id.* Plaintiff nevertheless reported on January 13, 2003 that the stimulator was working, and the stimulator was reprogrammed. *Id.* On March 7, 2003, Plaintiff reported that the stimulator was doing "real well," and it was again reprogrammed. Tr. 176. Plaintiff reported a shooting pain on May 5, 2003, and the stimulator was reprogrammed. Tr. 189. Plaintiff reported on July 2, 2003, that his medications and the stimulator were helping his pain, and the stimulator was reprogrammed. *Id.* On October 27, 2003, Dr. S. Wilson noted Plaintiff's report of the medications and stimulator helping, although he had lower back and left leg pain. Tr. 188. On November 20, 2003, the stimulator was again reprogrammed. *Id.*

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Plaintiff argues that the ALJ inappropriately rejected the opinion of Dr. S. Wilson as to the severity of his pain and as to the limitations imposed upon his ability to perform work activity as a result of such pain. Plaintiff argues that the ALJ points to no opinion from an examining or treating physician that contradicts Dr. S. Wilson's opinion about the severity of his pain during the relevant period, primarily 2003. The ALJ pointed to the treatment records of Dr. S. Wilson, as well as Dr. Wilson, and Plaintiff's own reports of his activities in declining to give this opinion controlling weight. Indeed, as noted above, Dr. S. Wilson repeatedly noted that Plaintiff's pain was helped by the epidural steroidal injections, dorsal spinal cord stimulator, and his medications.

Dr. S. Wilson indicated that Plaintiff's pain "is present to such an extent to be distracting to adequate performance of daily activities or work." Tr. 186. However. Dr. Wilson indicated that Plaintiff was able to get through his daily activities and engage in sedentary activities for short periods without problems. Tr. 157. Dr. S. Wilson indicated that physical activity, such as walking standing, sitting, bending, stooping, moving of extremities" would increase Plaintiff's pain to such a degree as to cause distraction from task or total abandonment of task. Tr. 186. However, Dr. Wilson indicated that Plaintiff could sit for one to two hours, stand for 30 minutes, and walk so long

-18-

as he had the opportunity to rest.  Tr. 157.  In addition, Plaintiff testified that he could sit for 30

minutes at a time, walk for a mile, and engage in other activities.  Tr. 207-09.  The ALJ's RFC

assessment reflects these limitations, and Dr. S. Wilson's opinion that physical activity would

increase Plaintiff's pain to that degree is not supported by her own treatment notes, the notes and

opinions of Dr. Wilson, and Plaintiff's own reports and testimony as to his activities.  Dr. S. Wilson

indicated that pain and or drug side effects could be expected to seriously limit Plaintiff's

effectiveness due to distraction, inattention, or drowsiness.  Tr. 187.  However, none of the treatment

records reflect reports such problems.  While Plaintiff clearly continued to experience pain, the

record simply does not reflect that his pain was wholly unresponsive to treatment.  Indeed, Dr. S.

Wilson's own treatment records indicate that Plaintiff's pain responded to his medications, epidural

steroid injections, and dorsal spinal cord stimulator.

The ALJ's assessment of the disabling nature of the claimant's pain is due considerable

deference.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  For pain to rise to the level

of disabling, that pain must be "constant, unremitting, and wholly unresponsive to therapeutic

treatment."  *Chambliss*, 269 F.3d at 522; *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Wren

v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  Subjective complaints of pain must be corroborated

by objective medical evidence.  *Chambliss*, 269 F.3d at 522 (*citing Houston v. Sullivan*, 895 F.2d

1012, 1016 (5th Cir. 1989)). Whether pain is disabling is an issue for the ALJ, who has the primary

responsibility for resolving conflicts in the evidence. *Chambliss,* 269 F.3d at 522 (*citing Carrier v.

Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991)).  In this case the ALJ found that "[w]hile [Plaintiff]

undoubtedly still experiences discomfort following his two back surgeries, the record actually

reflects a continuous pattern of improvement after the second procedure." Tr. 18.  The ALJ further

noted that despite his discomfort, Plaintiff has indicated that he has improved; he can walk

unassisted and without difficulty for up to one mile; he can perform limited postural maneuvers; he

can tolerate activities such as reading and watching television so long as he is able to alternate positions; and he has demonstrated no objective clinical sign of depression. *Id*.

Plaintiff argues that he "began to deteriorate after March 2003." However, Dr. S. Wilson's own notes in 2003 indicate that with the stimulator, Plaintiff was "doing real wel," and that his medications and the stimulator helped. Tr. 188-89. Plaintiff argues that the adjustments of the stimulator demonstrate that his pain was not being adequately controlled. He does not point to specific medical evidence to support this contention. The ALJ did not find that Plaintiff had no pain. Indeed, the evidence demonstrates that Plaintiff continued to experience pain. However, the evidence in the record does not demonstrate that Plaintiff's pain caused the type of limitations noted by D. S. Wilson in the form she completed.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). The task of weighing the evidence is the province of the ALJ. *Chambliss*, 269 F.3d at 523. The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* However, in weighing the evidence, the ALJ is not free to reject the uncontroverted opinions of a treating physician as to the limitations imposed by Plaintiff's impairments, solely because he has a "different interpretation of the evidence." *See Frank*, 326 F.3d at 622 (where the Fifth Circuit noted in dicta that the ALJ should not substitute his own medical conclusions about the effects of the claimant's impairments). Here, the ALJ noted that Dr. S. Wilson's opinion as to the limitations imposed by Plaintiff's pain was unsupported by the evidence of record. Moreover, the ALJ primarily relied upon the opinions of Dr. Wilson and upon Plaintiff's own testimony and reports of activities in making his RFC assessment and in determine what limitations were imposed by Plaintiff's pain.

The instant matter is distinguishable from the situation addressed by the Fifth Circuit in *Newton*.  In that case, the court noted:

> This is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another. Nor is this a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion. Instead, this is a case where the ALJ summarily rejected the opinions of Newton's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.

*Newton,* 209 F.3d at 458 (internal citations omitted).  Clearly, good cause to disregard the opinions of a treating physician is found where such opinions "are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001).  In *Leggett v. Chater*, the Fifth Circuit found that the ALJ had good cause to give little weight to the opinion of a treating physician which was not consistent with other opinions of treating physicians, the objective medical evidence, and the claimant's regarding his physical abilities.  *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). This is a case where the ALJ considered the opinions of more than one treating specialist in determining which opinion to give controlling weight.  I find that the ALJ appropriately exercised his discretion in determining which opinion among the treating specialists was entitled to greater weight.  *Muse*, 925 F.2d at 790; *Chambliss*, 269 F.3d at 523.  I further find that the ALJ demonstrated good cause for rejecting the opinion of Dr. S. Wilson insofar as it was not supported by her own treatment records or the treatment records of Plaintiff's other treatment providers. Finally, I find that the ALJ appropriately addressed each of the factors of 20 C.F.R. § 404.1527(d), noting Plaintiff's treatment by a pain management specialist, describing the treatment provided and the frequency of such treatment, and describing the degree to which such opinion was consistent with the record as a whole.

Plaintiff argues that because the ALJ was required to recontact Dr. S. Wilson before determining not to give such opinion controlling weight.   Failure to recontact a medical source may constitute reversible error. In *Ripley*, the Commissioner's decision was reversed, and the matter remanded with instructions to obtain a report from a treating physician when the evidentiary record contained no medical source evidence whatsoever regarding the effects of the claimant's impairment on his ability to work. *See Ripley*, 67 F.3d at 557-58.   In *Myers*, the Commissioner's decision was reversed and remanded where the ALJ had "summarily rejected the opinions of [the claimant's] treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant." *Myers*, 238 F.3d at 621.   As previously noted, this is not a case where the ALJ rejected the opinion of a treating specialist based on the testimony of a non-examining or no-specialist source; rather, the ALJ chose among the opinions of the treating specialists.

Applicable case law in the Fifth Circuit requires remand for failure to re-contact a treating physician when the physician's records are inconclusive or otherwise inadequate to receive controlling weight, the record contains no other medical opinion evidence based on personal examination or treatment, and the claimant proves prejudice. *Newton*, 209 F.3d at 453.   Thus, the duty to re-contact a claimant's treating medical source is limited to cases where existing medical evidence is inadequate to make a disability determination, either because it is internally conflicting, is incomplete, or is based on unconventional or questionable diagnostic techniques.   This view is consistent with Social Security Ruling 96-2p (July 2, 1996)("SSR 96-2p"), which notes that additional evidence or clarifying reports may be necessary when the treating source's medical opinion appears lacking or inconsistent.   This view is also consistent with SSR 96-5p, which requires that the ALJ make a reasonable effort to re-contact a treating source if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the ALJ cannot ascertain the basis of the opinion from the case record.

In this case the record contains other medical opinion evidence based on personal examination or treatment. *Newton*, 209 F.3d at 453. Moreover, the record contains substantial evidence to support the ALJ's RFC finding. The ALJ was not required to re-contact Dr. S. Wilson where there was substantial evidence in the record upon which to determine disability and to make the RFC determination. I find that the ALJ did not err by failing to appropriately consider Dr. S. Wilson's opinion as a treating physician, and he did not err by failing to re-contact this treating specialist. I find that the ALJ's RFC determination and opinion are supported by substantial evidence in the record. I further find that the ALJ applied the correct legal standard.

Having found no basis to reverse and remand the final opinion of the Commissioner, I do not address Plaintiff argument that he is entitled reinstatement of his benefits and repayment of back benefits under 20 C.F.R. § 404.1597a(i).

## IV.    CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S.

Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 1st day of September, 2006.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**